# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings |
| | Under Chapter 13 |
| MARCUS THEOTIS KOGER, | |
| | Case No. 12-31409 |
| Debtor(s). | |

## OPINION

First Collinsville Bank (bank) seeks relief from the automatic stay of 11 U.S.C. § 362(a) to proceed with collection of a nondischargeable judgment of $4,348.88 entered in its favor and against the chapter 13 debtor, Marcus Theotis Koger, in adversary proceeding No. 12-03186. The bank contends that the debtor's plan of reorganization does not provide for payment of the debt, thus depriving the bank of adequate protection and giving cause to grant relief from the automatic stay. The debtor responds that allowing the bank to proceed with collection efforts during the pendency of the chapter 13 case will elevate this unsecured debt above the secured and priority debts and above other general unsecured debts. Therefore, according to the debtor, the bank must wait until the chapter 13 case is concluded to begin collection of the nondischargeable debt. The facts are as follows:

The debtor filed this chapter 13 case on July 27, 2012. The debtor's Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (form B22C), filed on the petition date, reveals that he is a below-median debtor. On Schedules I and J, he showed monthly income of $3,240.00 and monthly expenses of $2,749.63, resulting in a monthly chapter 13 plan payment of $490.00 for 36 months. The debtor listed a debt of $2,000.00 owed

1

to First Collinsville Bank on an "Open Account" as an unsecured debt on Schedule F. The bank confirmed its unsecured status when it filed claim #8-1 for $2,100.63 and claim #9-2 for $164.10.

The debtor's original plan, filed with the petition, did not contain a separate provision for the bank. Rather, the plan relegated the bank to treatment as a non-priority unsecured creditor entitled to payment of $0.00 under paragraph 10 of the plan. On October 25, 2012, the bank began a dual approach to defeat its treatment under the original plan and to bolster its position *vis a vis* the debt. On that date, it objected to confirmation of the original plan as filed in bad faith and filed an adversary complaint (No. 12-03186) objecting to the dischargeability of its debt under 11 U.S.C. §§ 523(a)(2) and (a)(4). The allegations underlying both actions revolved around the debtor negotiating a check at the bank drawn on an account that the debtor knew to be closed at a second bank (Reliance Bank). The bank contended that the debtor obtained funds fraudulently through this scheme in which, a day prior to the bankruptcy filing, he deposited the check drawn on the closed Reliance Bank account and promptly withdrew the funds from his account at the bank.

Subsequently, the bank's objection to the original plan was mooted by an order of January 4, 2013, because the debtor had filed a First Amended Plan the day before. The First Amended Plan and all plans filed thereafter[1] did not contain a separate provision for the bank. Rather, each plan contained the same paragraph 10 allotting $0.00 to the unsecured creditors. The bank, however, did not file any more objections to the debtor's plans. Instead, the bank pursued its adversary proceeding. That proceeding concluded on April 9, 2013, with an agreed judgment

---

[1] These were the Second Amended Plan confirmed on February 27, 2013, and the Third Amended Plan approved on April 1, 2013.

2

entered in favor of the bank and against the debtor in the amount of $4,348.88, which amount was agreed to be nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4).

On April 29, 2013, the bank filed the motion for relief from the automatic stay described above seeking to proceed with collection of its nondischargeable judgment. The debtor objected to the motion for relief from the automatic stay on May 7, 2013. As noted above, the approved Third Amended Plan, in effect when the bank filed the relief from stay motion, calls for the debtor to fund the plan with monthly payments of $490.00 for 36 months. *Third Amended Plan* at ¶ 1. Under the plan, the trustee is to pay Administrative Expenses of $1,962.50 to debtor's former counsel, *id.* at ¶ 2; a payment of $125.48 per month (estimated) to a secured creditor holding a "910 claim" of $6,609.00 on a motor vehicle, *id.* at ¶ 4A; a priority claim of $400.00 (estimated) owed to the Illinois Department of Revenue, *id.* at ¶ 7C; and, as stated above, $0.00 to non-priority unsecured creditors, *id.* at ¶ 10. The Third Amended Plan provides further that "[p]roperty of the estate shall revest in the Debtor upon confirmation of the Debtor's Plan, subject to the rights, if any, of the Trustee to assert a claim to additional property of the estate acquired by Debtor post-petition pursuant to 11 U.S.C. § 1306." *Id.* at ¶ 14. At the pretrial hearing on May 20, 2013, counsel for the trustee reported that, as of that date, the plan provided a pool of $0.00 for the unsecured creditors but there was a surplus of approximately $9,000.00, subject to modification at any time. The Court took the matter under advisement on May 20, 2013, and ordered the parties to file briefs on or before June 19, 2013.

A creditor seeking relief from the automatic stay first must present a prima facie case showing "'a factual and legal right to the relief that it seeks.'" 3 *Collier on Bankruptcy* ¶ 362.10,

at 362-135 (16th ed. 2013) (quoting *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D. N.Y. 1994).[2]  Failure to do so requires denial of the relief sought. *Id.* at 362-135.

In the instant case, the bank asserts that it is entitled to relief from the automatic stay based on a lack of adequate protection in that the debtor's plan of reorganization does not provide for payment of the bank's nondischargeable debt.  The bank, however, rests on this skeletal argument without providing any authority to support its assertion.  Its presentation is typified by its failure to provide even a Bankruptcy Code section on which it relies.  The Court can only assume that the bank is proceeding under 11 U.S.C. § 362(d)(1) which provides:

> **(d)**  On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> **(1)**  for cause, **including the lack of adequate protection of an interest in property** of such party in interest . . . .

11 U.S.C. § 362(d)(1) (emphasis added).  Under this Code section, the bank has not presented either a factual or legal basis to show that it is entitled to relief from the automatic stay based on a lack of adequate protection.

Adequate protection is a term of art that is described in § 361 of the Bankruptcy Code. The section states:

> When adequate protection is required under section 362, 363, or 364 of this title **of an interest of an entity in property**, such adequate protection may be provided by—
>
> **(1)**  requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title . . . results in a decrease in the value **of such entity's interest in such property**;

---

[2] Although 11 U.S.C. § 362(g) allocates the burden of ultimate persuasion, the moving party still must "make a prima facie showing that it is entitled to the relief that it seeks." *In re Eatman*, 182 B.R. 386, 390 (Bankr. S.D. N.Y. 1995).

**(2)**  providing to such entity an additional or replacement lien to the extent that such stay . . . results in a decrease in the value **of such entity's interest in such property**; or

**(3)**  granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent **of such entity's interest in such property**.

11 U.S.C. § 361 (emphasis added).  Because the section's purpose, as expressed in its clear language, is to protect an entity's interest in property against a decrease in value and to afford it the benefit of its bargain, *see, e.g., In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985), it applies to secured creditors who hold collateral and, less frequently, to lessors of real or personal property. 3 *Collier on Bankruptcy* ¶ 361.02[1], at 361-4.   The concept is not applicable to unsecured creditors who, by definition, do not have interests in property.  *See, e.g., In re Access Air, Inc.*, No. 99-04498-CH, 2000 WL 35798996, at *3 (Bankr. S.D. Iowa Mar. 27, 2000) ("[A]dequate protection is not available to the unsecured creditor.");  Annotation, *"What Constitutes Lack of "Adequate Protection" of Interest in Property of Estate for which Relief may be Granted from Automatic Stay Provision of Bankruptcy Code of 1978 (11 U.S.C.A. §362(a))*, 66 A.L.R. Fed. 505, at § 2[a] (1984, as amended weekly) ("The interest of the creditor which is protected by § 362(d) is limited to an interest in the property of the debtor, and it therefore normally is unavailable to unsecured creditors.").  Even undersecured creditors are denied adequate protection for the unsecured portions of their claims.  3 *Collier on Bankruptcy* ¶ 361.02[2], at 361-4 to 361-5 ("Adequate protection is required to protect an entity's interest in property. . . . In effect, protection is required only for the value of an entity's interest in the property.  If an entity's claim exceeds the value of its interest in property, only the interest is entitled to

protection; the remainder of the claim is unsecured and does not give rise to an interest in property that requires protection.").

Because adequate protection is not available to unsecured creditors, the Court must decide whether the bank is an unsecured creditor in this case. This question has been answered by the bank itself since it filed unsecured claims #8-1 and #9-2 in this case, and admitted that it "is an unsecured creditor in this case." *Bank's Memorandum in Support of Motion for Relief from Automatic Stay*, at 1. As a result, the bank is not entitled to adequate protection and may not have relief from the automatic stay based on a lack of adequate protection. As one court has noted:

> If the basis of the stay relief is lack of adequate protection of an interest in property, the nature of the movant's interest defines the need for adequate protection, and the scope of the prima facie case. In *United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370 (1988), the Supreme Court defined the nature of the secured creditor's interest and the extent of the adequate protection that § 362(d)(1) addresses: 'It is common ground that the "interest in property" referred to by § 362(d)(1) includes the right of a **secured creditor** to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay.'

*In re Elmira Litho, Inc.*, 174 B.R. at 902 (quoting *Timbers of Inwood Forest*, 484 U.S. at 370) (emphasis added). Here, with no "interest in property" deserving of adequate protection, there is no merit in the bank's contention that lack of adequate protection justifies lifting the automatic stay on its behalf.

Nonetheless, the bank tries to argue that its nondischargeable judgment of $4,348.88 entitles it to treatment different than the other general unsecured creditors in this case. The bank contends that what it holds "is not a general unsecured debt. It is a nondischargeable debt. The debts of General [sic] unsecured creditors will be discharged at the completion of the Plan. First Collinsville Bank's debt will not be discharged." *Bank's Memorandum*, at 1-2. The bank has

provided no evidence or authority to support its position that its nondischargeable debt is entitled to special treatment under the chapter 13 plan and that the absence of special treatment entitles it to relief from the automatic stay.  Its argument fails for two reasons.

The most obvious reason is that the plan is binding and it does not provide for special treatment for the bank.  The Second Amended Plan was confirmed on February 27, 2013, and the Third Amended Plan was approved on April 1, 2013, both events occurring without objection from the bank.  Neither plan contained a separate provision for the bank's claims and both plans paid nothing to the general unsecured creditors.  The bank now argues that "[i]f the Debtor wants the protection of Chapter 13, the Debtor should also accept the burdens of the Chapter 13, and propose a Plan that will pay First Collinsville Bank's nondischargeable debt in full over the term of the Plan." *Bank's Memorandum*, at 2**.**  It is too late to raise this argument.  "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."  11 U.S.C. § 1327(a).  Although it initially objected to the terms of the original plan as being proposed in bad faith, the bank abandoned this approach thereafter and focused exclusively on obtaining a judgment of nondischargeability.  Assuming it had a viable argument for special treatment prior to plan confirmation, such an argument is of no consequence now.  The bank cannot challenge the binding plan provisions that pay nothing to the unsecured creditors because it failed to exercise its right to do so prior to confirmation.  It cannot argue for treatment apart from the other general unsecured creditors because its opportunity to do so is long past.  The Court will not risk derailing the confirmed plan by granting relief from the automatic stay to allow collection by a creditor that failed to protect itself during the confirmation process.

In addition, in the context of finding the separate treatment of nondischargeable student loan debt to be impermissible, this Court has long held that a plan proponent must prove that the separate classification of nondischargeable unsecured debt is fair discrimination and is permissible under the anti-discriminatory provisions of 11 U.S.C. §1322(b)(1). *Compare In re Morgan, et al.*, No. 92-30568, slip op. at 2-3 (Bankr. S.D. Ill. Dec. 2, 1992) *(*finding debtors had not met their burden of proving that the separate classification and treatment of student loan debts is fair discrimination and is permissible under §1322(b)(1)) *with In re Clifton et al.*, No. 92-30733, slip op. at 5  (Bankr. S.D. Ill. Mar. 8, 1993) (finding debtors had met their burden to show that separate classification and treatment of child support arrearages is fair discrimination due to the strong public policy concerns involved).  In this case, the bank has presented no evidence, authority, or even argument to show that its claims would have been, or are now, entitled to separate classification and treatment under the plan.   As a result, the Court finds no merit in the bank's argument that it is entitled to relief from the automatic stay because it has been denied different and better treatment than all other general unsecured creditors.

For the reasons stated above, the Court finds no grounds to grant relief from the automatic stay to the bank to allow it to proceed with collection of its nondischargeable debt.

See Order entered this date.

ENTERED: August 30, 2013

                                        /s/ William V. Altenberger
                                        UNITED STATES BANKRUPTCY JUDGE